B"H

FILED

2015 JUL 13 PM 4:08

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF OHIO

1 15 CV 1390

Ædam David Clayman )

vs. )

Agents and Former Agents of )
The Trustees of The University of Pennsylvania

and, for the time being, )

Kensey Erin Pease

CASE NO. ____________

JUDGE NUGENT

JUDGE ____________

MAG. JUDGE VECCHIARELLI

COMPLAINT

The University of Pennsylvania

3400 Sansom Street

Philadelphia, PA

Pease, K.E.

Medical Student

Address Unknown

1. Having never filed a civil case before, and with only a couple hours to write and file this complaint, i will do my utmost to explain, in humble, hippocratic fashion, what contract breaches at The University of Pennsylvania precipitated the loss of my life and the fall of a Hh|ome[1].
2. The Jurisdiction of this Case falls under the Federal Court System as a consequence of the Diversity of Citizenship.
3. In Eve.reet, the langauge that i learned as a child at Akiva Academy from pre-K through.thru(ssJ016) 6th Grade, the word "neshemah" denotes a Soul. Take note of the word "shem", within, that corresponds to the Evereet word for "Name". In this sense, the Rabbis teach that the souls we have arise from our Names. My Name, David Moses | Morris Clayman,

[1] Please beaMr in mind that i am writing in B|essed ideolect, a Δ Dialect of Standard English that i am preparing as a more harmless variant of English for my suns and th|eir generation to use in their efforts to erase implicit bias. Spellings will be occasionally accompanied by stories or symbol simplifications, postfixed with a transition year, for phase-in automated spelling simplicity and "storyfication"

died at The University of Pennsylvania, under a non-stop assault, almost exclusively undertaken under conditions of atrocious sex, gender, religious, and age discrimination.

4. The Contracts that this concerns are all the Contracts to which the Trustees of The University of Pennsylvania and i entered into at the time that i enrolled |[2] matriculated at is the *Charter of the Disciplinary System of The University of Pennsylvania*,
5. i was cleared of all Charges on J011-07M-15D, then subjected to two separate, mutually antagonistic forms of Double Jeopardy:
    a. A Contract-breaching character smear on written by the Disciplinary Officer (Kris Olson) who investigated and prosecuted my case to the point of a loss, asserting to my Graduate Letter Admissions Committee Writer(s) in such a way so as to be more true than truth that the Panel had decided wrongfully, and had "set the evidence aside." Ironically, this accusation came from an Officer who had just three days before confessed to having failed to read the material that s|he had accused me of wrongfully sharing, according to h|er in breach of Student Academic Freedom, with a peer at the University. This is rather like a petulant child with the power required to burn Your career and Your life to the ground on a whim, who can't read a picture book, accusing an adult with tens of thousands of titles read of not finishing the first two chapters of *Genesis*, or the second-to-last page of Piketty's *Capital in the 21st Century*.
    b. A character attack released weeks later with the qualities of a normative Charge buried in my Hearing Panel Decision, dressed up as a "Fact" but fundamentally a Normative Judgment that should have required a Charge of its own, which claimed that my conduct, though not harassment, had been found to be "annoying, unusual, and lacking [rather than excelling -- ed] in judgment". Having never been charged for conduct "annoying, unusual, and lacking in judgment", i had not prepared for that Charge, and was not prepared through the experience of reading or experiencing other Hearing Panels "Findings of Fact" as my opponents had done to contest claims so as to influence the Findings. As such, by Contract subscribed to by a Weaker Party, and by the reasoning of the *Fellheimer* Case, i deserved for this emphatically phrased and framed normative claim, in fundamental fairness, to be stricken from my record or subjected to fair contest granted an Appeal Proceeding.
6. At this moment, in this first filing, i will need to focus on the most egregious source of this long and deadly chain of Contract Breaches: the notion that the Appearance of the presumed Complainant used, as it seems, in sham fashion by Agents acting on behalf of The Trustees—Kensey Erin Pease of Oxnard, CA—could evade both:
    a. questions about h|is basic actions as they related to the uptake surrounding this case;
    b. Complaint | Defense Testimony on the Day of the Hearing without abandonment of Claims, when Defense called for h|im to testify in Defense under the Rules of the *Charter*, h|is presence was entirely critical for the reading of the Case, and separately, even under the abased reading of the Contract i was forced to accept at the last minute by the DHO, by h|is prerogative, h|e was available to testify on the Hearing Date; and,

[2] This symbol, the |, deserves a quick note of explanation. It simply means "logical and/or". The symbol is readily accessible on most all modern KBs for programming, and has immediate use value in the realm of law, clearing up masses of unnecessary legalese.

B'H

c. an honesty test under the Code of Academic Integrity through in-person testimony after the Counterproposal of the innocentest had highlighted areas of disagreement in the Basic Facts of the Case,

7. In a chain of messages leading up to 6PM on J011-07M-11D, exactly four years ago before this J011-07M-12D Monday (the Statute of Limitations *might* trigger on some of the associated claims in four days, on J011-07M-15D), Dr. Kris Olson and Dr. Philip Rea of The University of Pennsylvania denied the Plaintiff as well as the Plaintiff's Advisor the right to cross-examine the Complainant, in violation of our Contracts which, under the *Fellheimer* case logic at Drexel University, had the character and enforceability of Contracts, particularly when the Violation is so egregious as to threaten the fundamental fairness of judicial process.

Would ask for relief for loss of life, loss of educational opportunity, loss of work opportunity, loss of career lifespan, loss of social calmunity, loss of stable identity, loss of life trajectory and life meaning, violation of fundamental religious identity, violation of practically all affective bonding models, ostracism from Penn and Philadelphia, and front-loaded medical career lifetime service impact, valued inferentially at the Value of a Statistical Life, as measured by Vanderbilt University Researchers, at 6mB, and punitive damages for not mitigating this on the many appeal attempts earlier, at 12 mB, where mB equals a millibillion. In the context of Penn's Endowment, which measures over 9.3 Billion, this sum will be just enough for the Trustees' Endowment Officers and Lawyers to pay attention, reform, and remember. The vast majority of these funds will be stewarded carefully to resolve Theses generated in the course and aftermath of David's death, including preventive strategies to halt and interfere with survival testing without resorting to LiTHIUM claims.

All other claims and evidence will be forthcoming in Æmendment and Discovery.

J015-07月13日

J015-07月13日 J