IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ADAM DAVID CLAYMAN, | ) | CASE NO. 1:15 CV 1390 |
| | ) | |
| Plaintiff, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OF OPINION** |
| UNIVERSITY OF PENNSYLVANIA TRUSTEES, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

*Pro se* Plaintiff Adam David Clayman filed the above-captioned action against the University of Pennsylvania Trustees, Kensey Erin Peese, and David Walzer, M.D. Plaintiff claims he was accused of misconduct related to an interaction he had with Ms. Pease. He seeks monetary damages and an apology.

**Factual and Procedural Background**

Plaintiff's Complaint is almost entirely incomprehensible. He filed an Amended Complaint which is even less coherent and written in a stream of consciousness fashion, with narratives seemingly unrelated to each other. Plaintiff mentions that Dr. Walzer diagnosed him with manic depression. He claims he named Dr. Walzer in this lawsuit because he believes the term "symptomosis" is more appropriate than "diagnosis." He mentions his desire to implement "preventive strategies to halt and interfere with survival testing without resorting to Lithium claims." (ECF No. 1 at 3).

There is a common theme running through Plaintiff's writings concerning a disciplinary action by the University of Pennsylvania. While it is difficult to piece together, it appears female student Kensey Erin Peese brought harassment charges against him after he showered her with unwanted gifts and attention. The hearing took place on July 11, 2011. Plaintiff received the decision on July 15, 2011. He indicates at first that he was not convicted of the charges because his parents made the University aware of his mental health issues. Plaintiff believes the soul arises from our names. He contends his name died as a result of the charges and hearing process.

Plaintiff asserts the University breached a contract and indicates that "the contracts that this concerns are all the contracts to which the Trustees of the University of Pennsylvania and I entered into at the time I enrolled/matriculated is the *Charter of the Disciplinary System of the University of Pennsylvania.*" (ECF No. 1 at 2). He claims he was cleared of all charges; however, the decision described his conduct, "though not harassment, ...to be 'annoying, unusual, and lacking [rather than excelling–ed] in judgment.'" (ECF No. 1 at 2)(brackets in original). He states he was not charged with conduct that was annoying, unusual and lacking in judgment and he did not prepare for this charge. He wants that phrase stricken from the decision. He also claims that he could not question Pease. His request for relief varies from monetary damages in the amount of 12 "millibillion", to a written apology, which he provides for the University. The apology itself is a stream of consciousness, which includes a conversation between himself and Dr. Drew Endy at a Meeting of a Bioethics Committee, and commits the University to "develop and drive forward survival prevention through Inverted Aging, encouraging our Calmunity to identify with Years Young, Century-Computed rather than Years Old. (ECF No. 2-2 at 34).

## Standard of Review

While *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the district court may dismiss an action *sua sponte* if the Complaint is so "implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion" as to deprive the court of jurisdiction. *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999)(*citing Hagans v. Lavine*, 415 U.S. 528, 536-37 (1974)). The claims asserted in this action satisfy these criteria.

## Discussion

As an initial matter, this District is the wrong venue for the case. Pursuant to 28 U.S.C. § 1391, a civil action may be brought in: (1) any judicial district in which any Defendant resides, if all Defendants are residents of the State in which the District is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred; or (3) if there is no judicial district in which the action may otherwise be brought, any judicial district in which any Defendant is subject to the Court's personal jurisdiction with respect to such action. Plaintiff does not identify the University of Pennsylvania Trustees nor does he indicate where they each reside. Plaintiff does not provide an address for Pease but he indicates Dr. Watzer resides in Bryn Mawr, Pennsylvania. The incident giving rise to this Complaint took place in Pennsylvania. The current residence of the Plaintiff is not a factor in deciding the proper venue for a case. This case has no connection to the Northern District of Ohio.

When venue is not proper, 28 U.S.C. § 1406(a) dictates that the action shall be dismissed unless it is "in the interest of justice" that it be transferred to a district or division in which it could have been brought. Here, there is no point in transferring this case to the Eastern District of

Pennsylvania because Plaintiff has not established a basis for federal court jurisdiction.

Plaintiff contends federal jurisdiction is based on diversity of citizenship. A Plaintiff in federal court has the burden of pleading sufficient facts to support the existence of the court's jurisdiction. Fed.R.Civ.P. 8. In a diversity action, "the plaintiff must state all parties' citizenships such that the existence of complete diversity can be confirmed." *Washington v. Sulzer Orthopedics, Inc.*, No. 03-3350, 2003 WL 22146143, at *1 (6th Cir. Sept. 16, 2003) quoting *Chemical Leaman Tank Lines, Inc. v. Aetna Cas. and Sur. Co.*, 177 F.3d 210, 222 n. 13 (3d Cir.1999). Plaintiff does not provide the Court with his own citizenship or even his address, much less the citizenship of the University Trustees, or Pease.

Even if Plaintiff had established complete diversity of citizenship, he did not establish the amount in controversy criteria. In a federal diversity action, the amount in controversy alleged in the Complaint will suffice unless it appears to a legal certainty that the Plaintiff in good faith cannot claim the jurisdictional amount. *See Klepper v. First Am. Bank*, 916 F.2d 337, 340 (6th Cir.1990). When determining whether the amount in controversy required for diversity jurisdiction has been satisfied, the Complaint is examined at the time it was filed. *Id.* Plaintiff requests 18 "millibillion" in damages for "loss of life [his own], loss of educational opportunities, loss of work opportunities, loss of career lifespan, loss of social calmunity, loss of stable identity, loss of life trajectory and life meaning, violation of fundamental religious identity, violation of practically all affective bonding models, ostracism from Penn and Philadelphia, and front-loaded medical career lifetime service impact, valued inferentially at the Value of a Statistical Life, as measured by Vanderbilt University Researchers, at 6 mb, and punitive damages for not mitigating this on the many appeal attempts earlier, at 12 mb, where mb equals millibillion." (ECF No. 1 at 3). At best, the Complaint can be

deciphered to suggest he was brought up on disciplinary charges, cleared of the charges after a hearing, but told his conduct was annoying, unusual and lacking in judgment. He does not allege the University imposed sanctions against him. There are no allegations in the case suggesting damages would amount to more than $75,000 as required to establish jurisdiction based on diversity of citizenship.

## Conclusion

Accordingly, this action is dismissed for lack of subject matter jurisdiction. The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.[1]

IT IS SO ORDERED.

_____
DONALD C. NUGENT
UNITED STATES DISTRICT JUDGE

Dated: October 2, 2015

---

[1] 28 U.S.C. § 1915(a)(3) provides:

> An appeal may not be taken *in forma pauperis* if the trial court certifies that it is not taken in good faith.